1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **CENTRAL DISTRICT OF CALIFORNIA**

10

11 VALENTIN CASTANEDA,           )   NO. CV 12-02212 SS
                                 )
12              Plaintiff,        )
                                 )
13         v.                    )
                                 )   **MEMORANDUM DECISION AND ORDER**
14 CAROLYN W. COLVIN,            )
   Acting Commissioner of the    )
15 Social Security Administration,)
                                 )
16              Defendant.        )
   _____)

17

18                              **I.**

19                         **INTRODUCTION**

20

21      Valentin Castaneda ("Plaintiff") brings this action seeking to

22 overturn the decision of the Commissioner of the Social Security

23 Administration (hereinafter the "Commissioner" or the "Agency") denying

24 his application for disability insurance benefits ("DIB") and

25 supplemental security income benefits ("SSI").  The parties consented,

26 pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned

27 United States Magistrate Judge.  For the reasons stated below, the

28 decision of the Agency is REVERSED and REMANDED for further proceedings.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on December 15, 2008. (Administrative Record ("AR") 130-36).  He alleged a disability onset date of September 10, 2005.  (AR 130-33; 134-36).  The Agency initially denied Plaintiff's claim on April 3, 2009.  (AR 58-62).  After Plaintiff requested and received reconsideration of his claim, Plaintiff's claim was denied again on June 29, 2009.  (AR 68-73).

On August 4, 2009, Plaintiff filed a written request for hearing. (AR 74-75).  On June 1, 2010, with the help of an interpreter, Plaintiff testified at a hearing held before Administrative Law Judge ("ALJ") Jeffrey A. Hatfield.  (AR 38-53).  On June 14, 2010, the ALJ issued a decision denying benefits.  (AR 23-32).

On June 14, 2010, Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR 1).  The Appeals Council denied Plaintiff's request on January 27, 2012.  (Id.).  Plaintiff then filed the instant action on March 15, 2012.

## III.

### FACTUAL BACKGROUND

Plaintiff, who was forty-two at the time of the hearing, is a Spanish-speaking male with limited English ability and a tenth grade education.  (AR 42, 132, 152, 157).  Plaintiff worked as a night stocker

2

at a grocery store from 1990 until his alleged disability onset date of September 10, 2005.  (AR 152).

During the hearing before the ALJ, Plaintiff stated that he was injured when he was walking backwards at work, tripped over one of the boxes that he was stocking, and fell on his right side.  (AR 44, 150). Plaintiff also stated that he worked an additional three months after the incident.  (AR 44).  Plaintiff testified that lower back pain prevents him from returning to work.  (AR 45).  Plaintiff further stated that the pain is only slightly reduced by medication and physical therapy, that he uses a cane for stability, and that his back pain has caused him to experience both pain in his left leg and mental problems, including difficulty retaining concepts.  (AR 47).

**A.   Plaintiff's Medical History**

A variety of medical professionals have examined Plaintiff between his alleged disability onset date and when he filed for benefits.  The Court  summarizes Plaintiff's medical history below.

On November 7, 2005, Plaintiff sought treatment from Israel Rottermann, M.D., Plaintiff's primary treating physician.  (AR 358). Dr. Rottermann reported that Plaintiff presented as a thirty-seven year-old male who weighed 270 pounds and was alert, well oriented, and cooperative for the examination.  (AR 358-59).  According to Dr. Rottermann, Plaintiff "sits comfortably for the physical examination, has no difficulty rising from the sitting position, and is able to stand

without using the arms of the chair." (AR 359). Dr. Rottermann also noted that Plaintiff "is able to walk without difficulty, but ambulates slowly, having normal ambulation, with no evidence of a limp" and has "normal heel-to-toe gait." (AR 359). Regarding Plaintiff's lower back, Dr. Rottermann reported that Plaintiff presented with "tenderness to palpation in the lumbar spine and muscle spasm" and had limited lumbar range of motion. (AR 359). Plaintiff also had a positive straight-leg test, and "x-rays of the lumbar spine show[ed] spurring and the presence of a compression fracture at T11-12." (AR 360-61). Dr. Rottermann further noted that based on an October 1, 2005 MRI, Plaintiff appeared to have a herniated disc and "a compression fracture with degenerative disc disease." (AR 361). Dr. Rottermann diagnosed Plaintiff with (1) "[l]umbosacral strain, musculoskeletal, with radicular complaints;" (2) "[p]ossible superimposed fracture of T11-12;" and (3) "[h]erniated disc, L4-5 and L5-S1." (AR 361). Dr. Rotternman also reported that Plaintiff was temporarily totally disabled. (AR 362).

After examinations on January 9, 2006, June 5, 2006, and July 19, 2006, Dr. Rottermann diagnosed Plaintiff with the same three conditions and reported that Plaintiff remained temporarily disabled. (AR 346, 351, 354). Additionally, on March 19, 2007, Dr. Rottermann reported findings "consistent with an L5-S1 radoculopathy." (AR 339). At various points during Plaintiff's treatment, Dr. Rottermann prescribed pain medication, including Darvocet, Soma, Lodine, Naprosyn, Hydrocodone, Naproxen Sodium, Orphenadrine, and Ranitidine. (AR 340, 343, 357, 362, 367, 370, 374, 376).

4

**B.   <u>Consultative Evaluations</u>**

**1.   Orthopedic Examinations**

On February 17, 2006, at the request of Dr. Rottermann, Dr. Lawrence Miller, M.D., saw Plaintiff for an initial pain management consultative examination. (AR 216). Dr. Miller reported that Plaintiff complained of lower back pain with radiation down both legs. (AR 217). Dr. Miller diagnosed Plaintiff with lumbar disc herniation with bilateral lumbar radiculitis and signs of sciatic nerve root tension, and Dr. Miller recommended treating Plaintiff with epidural steroids. (AR 218-20). Dr. Miller also reported positive straight leg raise and diminished lumbar range of motion. (AR 218). On April 24, 2006, Dr. Miller treated Plaintiff with epidural steroids. (AR 228). However, on May 1, 2006, Dr. Miller reported that, according to Plaintiff, the steroid injection only helped for two days. (AR 224). That same day, Dr. Miller again diagnosed Plaintiff with lumbosacral intervertebral disc disease with radiculopathy and observed that Plaintiff's "[l]umbar flexion is limited to 40 degrees with pain" and that his "[s]traight leg raise is positive bilaterally." (<u>Id.</u>).

On August 25, 2006, Plaintiff saw Dr. Seymour Alban, M.D., for an agreed medical examination. (AR 244). Plaintiff was diagnosed with (1) lower lumbar spine degenerative disease with stenosis at L4-5 and L5-S1, (2) a slight compression fracture at T12, and (3) obesity. (AR 258). Dr. Alban also noted that Plaintiff, who "appeared to give full and consistent effort during measurement," had twenty-five degrees of lumbar

flexion, which is "42% of normal lumbar spinal flexion." (AR 255).
Later, on April 5, 2007, Dr. Alban noted that Plaintiff was a candidate
for decompression and spine fusion surgery. (AR 239). However, Dr.
Alban observed that Plaintiff was a poor candidate due to his weight and
"tendency to magnify his weakness." (Id.). Dr. Alban also noted that
Plaintiff had stenosis of L4-5 and L5-S1 and that electrodiagnostic
studies corroborated nerve root irritation. (Id.).

On September 1, 2009, Dr. Kamran Hakimian, M.D., saw Plaintiff at
the request of Dr. Alban. (AR 469). Dr. Hakimian reported that
Plaintiff's "[r]ange of motion in the lumbar spine was painful." (Id.).
Dr. Hakimian also reported that an electrodiagnostic study of
Plaintiff's lower extremities was abnormal and that the results of his
examination "could indicate lumbar radiculopathy." (AR 472).

**2.   Psychiatric Evaluations**

On June 17, 2008, Plaintiff saw Dr. Nelson Flores, Ph.D., for a
psychological consultation. (AR 474). According to Dr. Flores,
Plaintiff reported that the pain and physical limitations Plaintiff
experienced following the September 10, 2005 incident left him unable
to carry out his ususal daily activities and that Plaintiff began to
feel sad and anxious about his inability to cope with the pain. (AR
477). Dr. Flores diagnosed Plaintiff with (1) major depressive
disorder, single episode, mild; (2) generalized anxiety disorder; (3)
psychological factors affecting mental condition, diabetes; (4) pain
disorder associated with both psychological factors and general medical

condition; (5) sleep disorder due to chronic pain, general medical condition; (6) and male hypoactive sexual desire disorder to due chronic pain.  (Id.).  Dr. Flores reported that Plaintiff's psychological disorders were directly related to the pain and physical limitations Plaintiff experienced following the September 10, 2005 incident.  (Id.).  Dr. Flores also reported that Plaintiff was temporarily totally disabled and recommended cognitive behavioral therapy.  (AR 478).

On September 22, 2008, Plaintiff saw Dr. Barbara Greenberg, M.D., the agreed psychological examiner.  (AR 284).  According to Dr. Greenberg, Plaintiff presented as a "well developed, well nourished" male who was "alert and oriented to person, place and time and reason for consultation." (AR 315).  Dr. Greenberg diagnosed Plaintiff with (1) "Depressive Disorder Not Otherwise Specified;" (2) "Anxiety Disorder Not Otherwise Specified;" (3) "Pain Disorder Associated with Both Psychological Factors and General Medical Condition (Low back injury);" (4) "Sleep Disorder Due to Chronic Pain, Insomnia Type;" and (5) "Male Hypoactive Sexual Desire Disorder Due to Chronic Pain."  (AR 318). However, Dr. Greenberg also noted that "[Plaintiff's] response style [during the examination] suggests a moderate tendency towards self-deprecation and a consequent exaggeration of emotional problems." (AR 317).

C.  **Vocational Expert's Testimony**

A vocational expert testified at Plaintiff's 2010 hearing.  (AR 48-52).  The expert testified that Plaintiff's "only past relevant work has

been as a laborer, stores" and that Plaintiff's past work was "medium work, SVP: 2 and as performed, the work was medium in exertion." (AR 49). The expert also testified that a hypothetical individual of Plaintiff's vocational profile and RFC would not be able to perform Plaintiff's past relevant work. (AR 50) (noting that "[Plaintiff's] past job was clearly at the medium level and this hypothetical person is limited to a range of light work or less"). The vocational expert testified that a person of Plaintiff's vocational profile and RFC "is best suited for a full range of sedentary work. But since we have no transferable skills, we're talking about jobs that are entry-level meaning no prior training or experience required." (Id.). The expert explained that such a hypothetical person could perform sedentary work as a nut sorter, an assembler who works from a bench, or a table worker. (Id.). The vocational expert also testified that performance of those jobs would not be precluded if the ALJ were to further restrict the hypothetical by providing that "this individual would be limited to simple routine, repetitive tasks, would be limited to low stress tasks that would permit only occasional changes in work setting and permit frequent contact with both public and coworkers but limit to superficial, non-confrontational, no arbitration and no negotiation types of activities." (AR 50-51).

**E.   Plaintiff's Testimony**

At the 2010 ALJ hearing, Plaintiff testified that he stopped working after a 2005 incident where he "was walking backwards and one of the boxes [he] was stocking was at [his] feet and [he] fell on [his

right hand [sic] side." (AR 44).  Plaintiff also testified that he did
not go to the emergency room and continued working for three months, was
placed on lighter duty, and eventually stopped working when his employer
told him that he could not continue working.  (AR 44-45).  According to
Plaintiff, back pain resulting from the 2005 incident prevents him from
working today.  (AR 45).  Plaintiff also stated that he has been treated
with medication, epidural injections, and physical therapy but that the
treatment has not provided relief.  (Id.).  For example, Plaintiff
testified that medication helps relieve the pain "[v]ery little, but not
much." (AR 46).  Plaintiff also testified that he began using a cane
in 2006.  (Id.).  Finally, Plaintiff stated that "[d]ue to . . . the
pain in [his] back, [he] has mental problems." (AR 47).  Specifically,
according to Plaintiff, "[he] has a lot of problems trying to
concentrate. [He] can't communicate very well with people. [He] ha[s]
a hard time trying to, to retain concepts . . . ." (Id.).  Plaintiff
stated that he began experiencing these problems after the 2005
incident.  (AR 48).  When the ALJ asked Plaintiff if he believes that
his emotional problems would improve if his physical problems were to
improve, Plaintiff answered, "I doubt that it would.  Maybe, I don't
know." (Id.).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a
medically determinable physical or mental impairment that prevents him

from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4)   Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

---

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. § 416.910.

10

(5)   Is the claimant able to do any other work?  If not, the
claimant is found disabled.  If so, the claimant is
found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d
949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and
the Commissioner has the burden of proof at step five.  Bustamante, 262
F.3d at 953-54.  If, at step four, the claimant meets her burden of
establishing an inability to perform the past work, the Commissioner
must show that the claimant can perform some other work that exists in
"significant numbers" in the national economy, taking into account the
claimant's RFC, age, education and work experience.  Tackett, 180 F.3d
at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the
testimony of a vocational expert or by reference to the Medical-
Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,
Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240
F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional
(strength-related) and nonexertional limitations, the Grids are
inapplicable and the ALJ must take the testimony of a vocational expert.
Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

\\

\\

\\

\\

11

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled under the Social Security Act. (AR 23-32).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of September 10, 2005.  (AR 25).  At step two, the ALJ found that Plaintiff had the severe impairments of "multilevel lumbar disc herniation with radiculopathy, depression, and anxiety."  (Id.).  In assessing Plaintiff's impairment, the ALJ "g[ave] significant weight to the assessment of Dr. Alban, the agreed upon medical examiner ("AME"), that [Plaintiff] is precluded from heavy lifting and repetitive bending and stooping because it is consistent with the evidence."  (AR 29).  After stating that he was placing great weight on Dr. Alban's reports, the ALJ "note[d] that the AME is the neutral expert to the contested Workers' Compensation claim agreed upon to evaluate [Plaintiff's] condition and to give an agreed upon residual functional capacity assessment."  (AR 29).  The ALJ also gave "significant weight" to the opinion of Dr. Barbara Greenberg, the agreed upon psychological examiner, that Plaintiff "has mild impairments in interpersonal communication, mild to moderate limitation in his ability to work with others, carry out detailed instructions, and maintain attention and concentration."  (AR 29).  In contrast, the ALJ "considered and g[ave] no weight to the temporary disability statements made periodically by Dr. Rottermann and Dr. Flores through the course of their treatment of

12

[Plaintiff]." (AR 30). It is unclear whether the ALJ discounted other opinions rendered by Dr. Rottermann and Dr. Flores.

At step three, the ALJ found that, through the last-insured date, none of Plaintiff's impairments met or medically equaled a listed impairment. (Id.). The ALJ then found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as denied in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 2-4 hours in an 8 hour period in 30 minute intervals, with use of a cane for balance; sit 6 hours in an 8 hour period, alternating sit/stand every 30 minutes; occasionally climb ramps/stairs; balance, stoop, kneel, and crouch; never ladders/ropes and crawl; no concentrated exposure to dangerous machinery and unprotected heights; limited to simple, routine, repetitive tasks; low stress environment permitting occasional changes in work setting; frequent interaction with public and coworkers in structured relationships.

(AR 27).

Next, at step four, the ALJ found that Plaintiff could not return to his past work. (AR 31). The ALJ relied on the testimony of a

13

vocational expert in coming to this conclusion. (Id.).  Finally, at step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id.).  In coming to this conclusion, the ALJ relied on the vocational expert's testimony that a person with Plaintiff's RFC would be able to perform sedentary work as a nut sorter, assembler, or table worker. (AR 32).  Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 32).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id.  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

14

1    If the evidence can reasonably support either affirming or reversing
2    that conclusion, the court may not substitute its judgment for that of
3    the Commissioner.  <u>Reddick</u>, 157 F.3d at 720-21.

4

5                                   **VII.**

6                               **DISCUSSION**

7

8         Plaintiff contends that, at step three, the ALJ improperly
9    concluded that Plaintiff's impairments do not meet a Listing.
10   Specifically, Plaintiff states that "Listing 1.04A [sic] creates a
11   presumption of disability if [Plaintiff] meets or equals the
12   requirements of Listing 1.04A [sic] requiring evidence of nerve root
13   compression with neuro-anatomic distribution of pain, limitation in
14   range of motion, motor loss (atrophy with associated muscle weakness or
15   muscle weakness) with reflex loss or sensory loss (not both) and
16   positive straight leg raising if the lower back is involved."
17   (Complaint Mem. at 2).  According to Plaintiff, certain medical reports
18   referenced by the ALJ establish that Plaintiff's impairments meet
19   Listing 1.04(A).  (<u>Id.</u>).  Plaintiff also contends that the ALJ failed
20   to properly consider whether Plaintiff's impairments equal a Listing.
21   (<u>Id.</u> at 5).

22

23        The ALJ's finding regarding the listings was conclusory and not
24   fully explained:

25

26        The undersigned has considered all of the medical Listings
27        relevant to the claimant's serve physical impairment, but the

28
                                     15

1          undersigned does not find that the claimant's impairment

2          meets or equals any of the medical Listing or combination of

3          medical Listings.

4

5   (AR 26).  This finding appears to be in conflict with other findings

6   later in the ALJ's decision.

7

8          As Plaintiff notes, some of the medical reports referenced by the

9   ALJ could suggest that Plaintiff meets Listing 1.04(A), although due to

10  some confusing references in the opinion, the Court is uncertain as to

11  the grounds for the ALJ's conclusions.  Based upon its review of the

12  ALJ's opinion, this Court could not discern whether the ALJ was

13  rendering conclusions about Plaintiff's impairments when he referenced

14  the medical reports or merely noting the existence of the reports.  For

15  the reasons discussed below, the Court finds that the ALJ's decision

16  should be REVERSED and this action REMANDED for further proceedings.

17

18  **A.    The ALJ's Opinion Does Not Adequately Address Whether Plaintiff**

19        **Meets A Listing**

20

21         A claimant meets a listing if he is diagnosed with a listed

22  impairment and has the symptoms or "findings" that the Listings

23  associate with the impairment.  In contrast, a claimant equals a listing

24  if he does not have the listed symptoms but instead has symptoms that

25  "are at least equal in severity and duration to the listed findings."

26  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

27

28

16

1    Here, Plaintiff asserts that he meets Listing 1.04(A).  Listing

2   1.04 covers "[d]isorders of the spine (e.g., herniated nucleus pulposus,

3   spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

4   disease, facet arthritis, vertebral fracture), resulting in compromise

5   of a nerve root (including the cauda equina) or the spinal cord."  20

6   C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.  As discussed above, in order

7   to meet Listing 1.04, a plaintiff must not only have a disorder of the

8   spine but also symptoms that the Listing associates with the impairment.

9   Under Listing 1.04(A), symptoms satisfying Listing 1.04 include

10   "[e]vidence of nerve root compression characterized by neuro-anatomic

11   distribution of pain, limitation of motion of the spine, motor loss

12   (atrophy with associated muscle weakness or muscle weakness) accompanied

13   by sensory or reflex loss and, if there is involvement of the lower

14   back, positive straight-leg raising test (sitting and supine)."  20

15   C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

16

17    Plaintiff contends that, "[b]ased on the ALJ's own reporting as

18   supported by the Record [sic], the criteria of Listing 1.04A [sic] for

19   positive straight leg raising, decreased range of motion, and decreased

20   sensation should be found to be satisfied."  (Complaint Mem. at 2).

21   According to Plaintiff, the ALJ's conclusion that Plaintiff failed to

22   meet a listing conflicts with the ALJ's statement that "'[p]hysical

23   examinations have noted tenderness and muscle spasms in the lumbar area,

24   positive straight leg raising, decreased range of motion, and decreased

25   sensation.'"  (Complaint Mem. at 2) (quoting AR 28).  However, an ALJ

26   may describe medical evidence without basing his opinion on that

27   evidence.  For example, an ALJ may comment on but ultimately discount

28

17

medical reports that are inconsistent with the record as a whole.  <u>See</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  Here, the opinion is unclear as to whether the ALJ was commenting but discounting the medical evidence.  The Court cannot determine whether the ALJ was merely acknowledging the reports discussed above or concluding that the reports demonstrated that Plaintiff suffered from the symptoms described above.  Specifically, it is unclear whether (1) Plaintiff's diagnosis is a spinal disorder within the meaning of Listing 1.04; and (2) Plaintiff's symptoms otherwise meet or equal Listing 1.04(A).

**1.   It Is Unclear Whether Plaintiff's Diagnosis Is A Spinal Disorder Within The Meaning Of Listing 1.04**

The ALJ did not adequately explain whether he found that Plaintiff does or does not have a spinal disorder within the meaning of Listing 1.04.  Listing 1.04(A) covers disorders of the spine.  At step two, the ALJ found that Plaintiff has the severe impairments of multilevel lumbar disc herniation with radiculopathy, depression and anxiety.  (AR 25). The National Library of Medicine's controlled vocabulary thesaurus, MeSH (Medical Subject Headings) defines "radiculopathy" as a "[d]isease involving a spinal nerve root . . . which may result from compression related to INTERVERTEBRAL DISK DISPLACEMENT; SPINAL CORD INJURIES; SPINAL DISEASES; and other conditions.  Clinical manifestations include radicular pain, weakness, and sensory loss referable to structures innervated by the involved nerve root."  (See National Library of Medicine Medical Subject Headings  database http://www.nlm.nih.gov).

Therefore, it appears that, at the step-two level, the ALJ found that Plaintiff suffers from a disorder of the spine.

The Court finds that while the ALJ concluded that Plaintiff's impairment does not meet a listing, the ALJ failed to clarify whether Plaintiff does or does not have a spinal disorder within the meaning of Listing 1.04. However, even if the ALJ did find that Plaintiff suffered from a disorder of the spine, there are at least two reasons why Plaintiff's impairments may not meet Listing 1.04. First, Plaintiff's spinal disorder may fail to compromise a nerve root or the spinal cord. Second, as discussed below, Plaintiff's spinal disorder may not cause the remaining symptoms necessary to meet Listing 1.04.

### 2.   It Is Unclear Whether Plaintiff's Symptoms Are Those Listed In 1.04(A)

Plaintiff asserts that the ALJ found that he suffers from symptoms listed in 1.04(A). The Court cannot reach the same conclusion due to ambiguities in the ALJ's opinion. Although the ALJ stated that "[p]hysical examinations have noted tenderness and muscle spasms in the lumbar area, positive straight leg raising, decreased range of motion, and decreased sensation," (AR 28), it is unclear whether Plaintiff's symptoms are entirely consistent with Listing 1.04(A).

The first requirement of Listing 1.04(A) is nerve root compression characterized by neuro-anatomic distribution of pain. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A). As discussed above, radiculopathy is

a disease of a spinal nerve root that may result from compression. Neuro-anatomic distribution of pain refers to the "radicular type of pain seen with a herniated intervertebral disc." See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(K)(3). In describing Plaintiff's medical history, the ALJ concluded that Plaintiff suffers from radiculopathy. (AR 28). The ALJ also cited to a medical report which found that Plaintiff "does have nerve root irritation as corroborated by electrodiagnostic studies." (See AR 28, 239). This evidence appears to support the first element of Listing 1.04(A). However, the ALJ did not expressly address whether Plaintiff's impairment meets the first element of Listing 1.04(A).

The second requirement of Listing 1.04(A) is limitation of motion of the spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A). In describing Plaintiff's medical history, the ALJ observed that physical examinations of Plaintiff noted "decreased range of motion." (AR 28). This evidence appears to support the second element of the Listing. However, it is unclear whether the ALJ was rendering conclusions about Plaintiff's impairments when he referenced the medical reports or merely noting the existence of such reports.

The third requirement of Listing 1.04(A) is motor loss accompanied by sensory or reflex loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A). In describing Plaintiff's medical history, the ALJ noted that Plaintiff favors his right side when walking and that physical examinations noted "decreased sensation." (AR 28). However, it is

again unclear whether the ALJ was rendering conclusions about Plaintiff's impairments when he referenced the medical reports.

Finally, the fourth requirement of Listing 1.04(A) is positive straight-leg raising.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A). In describing Plaintiff's medical history, the ALJ observed that some physical examinations indicated positive straight leg raising.  (AR 28).

In sum, the ALJ's findings are difficult to reconcile with his conclusion that Plaintiff does not meet or equal Listing 1.04(A).  The weight that the ALJ gave those examinations is unclear.  Accordingly, remand for consideration and further explanation of whether Plaintiff meets a listing is proper.

**B.**    **The ALJ's Opinion Does Not Adequately Address Whether Plaintiff Equals A Listing**

Plaintiff also contends that "[i]f [Plaintiff] is not found to meet [Listing 1.04(A)], remand for proper consideration of whether he equals that Listing should be made."  (Complaint Mem. at 4).  The Court agrees that the ALJ failed to properly address whether Plaintiff's impairments equal a Listing.

The Ninth Circuit has explained that "in determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."  Marcia, 900 F.2d at 176.  It is not enough for an ALJ to simply state that

21

"[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings . . . ." Id.  Instead, the ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  Here, the ALJ failed to explain why the combined effects of Plaintiff's physical impairments are not at least equal in severity and duration to those of a listed impairment.  Therefore, the Court must remand for the ALJ to expressly consider whether Plaintiff's physical impairments equal a listing.

## D.   Remand Is Required

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Because the ALJ failed to properly determine whether Plaintiff's impairments meet or equal a listing, remand is proper.  Upon remand, the ALJ must conduct an evaluation of the entire record in order to determine whether Plaintiff meets or equals a Listing.  In any written decision, the ALJ must adequately explain his evaluation of the relevant evidence and if he again finds that Plaintiff does not meet or equal a Listing, the ALJ must adequately explain such findings.

22

# VIII.

## CONCLUSION

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Agency and REMANDED for further proceedings.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this order and the Judgment on counsel for both parties.

DATED: March 22, 2013.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**